# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:04-cv-00589-RCJ-LRL |
| v. ) | |
| ) | **O R D E R** |
| R.D. PRABHU, M.D., and R.D. PRABHU- ) | |
| LATA SHETE, M.D.'S, LTD., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the court is defendant's Supplement to Defendant's Application for Attorneys' Fees and Other Expenses (#106). The court has considered the Supplement, the government's Opposition (#107), and defendant's Reply (#108). The court has also considered defendant's original Application for Attorney's Fees and other Expenses (#69), defendant's Amended Application for Attorney's Fees and Other Expenses (#84), the government's respective Oppositions (##85,86), and defendant's Joint Reply (#89), as well as the government's Supplemental Authority (##94,95), defendant's Notice of Additional Authority (#96), and the government's corresponding Opposition (#97). Defendant seeks an award of costs and attorneys' fees in the amount of $823,300.91 pursuant to the Equal Access to Justice Act ("EAJA" or "the Act"). 28 U.S.C. § 2412; *see also* 31 U.S.C. § 3730(g) (providing that EAJA fees are available in False Claims Act ("FCA") action).

## BACKGROUND

In its October 23, 2007 Order (#103), the court found that defendant R.D. Prabhu-Lata Shete, M.D.'s Ltd. (the "Shete Corporation") was the prevailing party under the EAJA and recognized that the issue of substantial justification was foreclosed from further review. Order (#103) at 3. However, due to the Shete Corporation's failure to demonstrate its GAAP net worth as of the time the civil action was

filed, the court denied its Application for Attorney's Fees and Other Expenses (#69) without prejudice to file a supplement with a sworn affidavit by its certified public accountant ("CPA") that included a balance sheet prepared in conformance with generally accepted accounting principles ("GAAP"). *Id.* at 7. As part of its supplemental application, the Shete Corporation submitted an additional affidavit of its CPA with an attached GAAP balance sheet evidencing its net worth as of December 31, 2004. Exh. 1 to Supp. (#106). This showing alone is insufficient to merit an award of attorney's fees because it does not allow the court to determine that the corporation's net worth as of the filing of this action did not exceed $7,000,000, the financial eligibility cap under § 2412(d)(2)(B)(ii).

The Shete corporation attached another affidavit, however, to its Reply, in which affidavit its CPA declares that when compared to the cash basis net worth calculations for December 31, 2003 and December 31, 2004, the December 31, 2004 GAAP net worth determination "would lead an experienced accounting professional, including [himself], to the conclusion that on May 6, 2004 [(the date the present action was filed)] it would not be possible for The Company's GAAP net worth to be in excess of $7,000,000." Exh. 1 to Reply (#108). This, the CPA explains, is because the "[d]ifference in the [Shete Corporation's] net worth between cash basis and GAAP is almost entirely attributable to the accounts receivable which are not included in cash basis." *Id.* Thus, contrary to the position asserted in the government's Opposition ((#107) at 2), the CPA has interpolated his client's relevant GAAP net worth to an extent sufficient under the EAJA (*i.e.*, to satisfy the court that the Shete Corporation's net worth did not exceed $7,000,000 at the time this action was filed). *See* § 2412(d)(2)(B)(ii).

**DISCUSSION**

In addition to meeting the prevailing party and substantial justification prongs of the EAJA, together with demonstrating financial eligibility to receive a fee award under the Act, a party must provide a statement of the amount sought, with an accompanying itemization from an attorney "stating the actual time expended and the rate at which fees and other expenses were computed." § 2412(d)(1)(B). The "itemized statement" must be sufficiently detailed to show "specific tasks performed." *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987). It must

describe the number of hours and the billing rate for each item of attorney time. *Cox Constr. v. United States*, 17 Cl. Ct. 29, 34 (Ct. Cl. 1989). Further, the descriptions provided must permit the court to separate compensable time (here, time spent on the underlying FCA action and EAJA fee litigation) from any non-compensable time. *Id.* Provision of such level of detail is a necessary, but not sufficient, step towards allowing the court to determine the "reasonable fees" and "reasonable expenses" permitted under § 2412(d)(2)(A). The burden ultimately rests on the applicant to demonstrate the reasonableness of its request. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991); *see also In re North*, 59 F.3d 184, 190 (D.C. Cir. 1995) ("Each element [, both hourly rates and hours expended,] must be reasonable, and, as to the reasonableness of each element, the party seeking reimbursement bears the burden.").

## I. Calculation of the EAJA Fees Award

### A. Reasonable Hourly Rate

The EAJA caps the hourly rates that attorneys may receive, as follows:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

The first of the two exceptions in sub-subsection (ii), the cost of living adjustment, has been routinely applied by the courts and is not contested by the government. The Shete Corporation, however, seeks higher hourly rates for some attorneys, claiming entitlement to the "special factor" exception as well. Because fees "shall be based upon prevailing market rates," *see id.*, only the lower of market rates or the statutory cap will be awarded. *See Meyer v. Sullivan*, 958 F.2d 1029, 1033-34 (11th Cir. 1992) (finding that Congress intended market rate to be a "starting point" in determining fees under the EAJA) (citation omitted), *superseded by statute on other grounds as stated in Cox v. Chater*, 1997 U.S. LEXIS 6563, at *4 n.1 (S.D. Ala. Feb. 28, 1997). The fee applicant has the burden, first, of proving what "prevailing market rates" are, and second, of proving that a "special factor" exists justifying reimbursement at those market rates (if they are higher than the cap rate). As to the first part

of this burden, the applicant generally should establish market rates through a source other than the applicant-attorney's own affidavit. *See Gulsby v. Barnhart*, 407 F. Supp. 2d 1293, 1296 (S.D. Ala. 2005) ("Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work.") (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)), *adopted by* 407 F. Supp. 2d 1293 (S.D. Ala. 2005). Nevertheless, "[w]here the fees or time claimed seem expanded or there is lack of documentation or testimony in support, the court may make an award on its own experience. Where documentation is inadequate, the court is not relieved of its obligation to award a reasonable fee, but the court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citing *Norman v. City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

The second part of the burden distinguishes between "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice speciality, such as patent law or knowledge of a foreign law or language." *Pierce v. Underwood,* 487 U.S. 552, 572 (1988). The Ninth Circuit has adopted a three-part test to justify super-statutory rates under this second part of the burden: (1) the attorney must possess distinctive knowledge and skills developed through a practice specialty, (2) those distinctive skills must be needed in the litigation, and (3) those skills must not be available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496 (citation omitted).

The fee application, in all of its subparts, labors to satisfy these burdens. Evidence of actual market rates is provided neither in the attorneys' affidavits, nor outside those affidavits. Exh. J, K to App. (#69). Moreover, there is insufficient evidence to support super-statutory rates for attorneys Samuel Benham or C. Stanley Hunterton of Hunterton & Associates in Las Vegas, Nevada. The Shete Corporation contends that the special factor adjustment should be applied to their fees because they were specifically chosen for this litigation due to their vast knowledge of the previous litigation against R.D. Prabhu, M.D. ("Prabhu") and the Shete Corporation. Reply (#89) at 14. Mere familiarity with the

facts, however, does not speak to, or otherwise demonstrate, skills developed through a practice speciality or those not available elsewhere at the statutory rate, as is required under *Love*, *supra*.

On the other hand, the court finds that Medicare fraud law represents a potential area of expertise and that Robert Salcido ("Salcido") possesses such expertise. Salcido declares that he has worked in the Health Industry Group at Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump") for thirteen (13) years, providing counseling regarding the application of health care fraud and abuse law, including the FCA. Exh. J to App. (#69) at ¶ 2. He was also a trial attorney in the Civil Fraud Unit of the United States Department of Justice, where he prosecuted cases under the FCA. Moreover, he has authored books on the FCA and healthcare fraud and abuse issues. *Id.* at ¶ 3-4. The government's own fees expert, Boyd S. Lemon ("Lemon"), has acknowledged that Salcido is an expert in the field of Medicare fraud law. Exh. 26 to Opp'n (#85) at ¶ 9.

Yet, in spite of the evidence of the first *Love* factor, special skills, the Shete Corporation has not shown that Salcido's experience in Medicare fraud law was "essential for competent representation." *Atlantic Fish Spotters Ass'n v. Daley,* 205 F.3d 488, 492 (1st Cir. 2000). In fact, Benham and Hunterton have defended cases involving Medicare false claims issues without need for outside counsel. *See*, *e.g.*, *United States v. Chen*, 2006 U.S. Dist. LEXIS 35845 (D. Nev. 2006) (action under FCA alleging Chen performed services for Medicare beneficiaries, but submitted false claims for reimbursement to Medicare contractors). Nor has the Shete Corporation presented evidence that no suitable counsel would have taken on its case at the statutory rate. *See Love*, 924 F.2d at 1496 (citation omitted).

The court finds that the Shete Corporation is not entitled to a special factor fee enhancement. To determine the appropriate fee based on the prevailing market rate for the services rendered, the court applies a cost of living adjustment which, as noted above, the government does not contest. Opp'n (#85) at 22. Appropriate cost of living increases are calculated by "multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ('CPI-U') for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of the EAJA's $125 statutory rate." *Thangaraja v. Gonzales,* 428 F.3d 870, 876-77 (9th

Cir. 2005) (citation omitted). Using this formula, the adjustment yields the following rates for the relevant years: 2004: (125 x 188.9)/155.7 = $151.65/hour; 2005: (125 x 195.3)/155.7 = $156.79/hour; 2006: (125 x 201.6)/155.7 = $161.85/hour.[1]

### B. Number of Reasonable Hours Expended

To obtain the "lodestar," the applicable hourly rates are multiplied by the number of hours "reasonably expended." *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983), *superseded by statute on other grounds as stated in Laube v. Allen*, 506 F. Supp. 2d 969, 978 (M.D. Ala. 2007)); *see also Lucas v. White*, 63 F. Supp. 2d 1046, 1057 (N.D. Cal. 1999) (appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved . . . ." ) (quoting *Hensley*, 461 U.S. at 431). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Envtl. Protection Info. Center, Inc. v. Pacific Lumber Co.*, 229 F. Supp. 2d 993, 1004-05 (N.D. Cal. 2002) (citing *Gates v. Deukmejian*, 987 F. 2d 1392, 1397 (9th Cir.1992)). The Ninth Circuit has held that a district court has wide discretion to determine the number of hours that prevailing lawyers reasonably expended. *See Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

### 1. Sufficiency of Billing Documentation

The government criticizes the fee application for using "block billing," a method of maintaining billing records in a manner "in which several different tasks are grouped and billed in one large block of time." *Hells Canyon Pres. Council v. United States Forest Serv.,* 2004 WL 1853134, at *8 (D. Or. Aug. 18, 2004) (citation omitted). At the same time, however, the government fails to point to specific entries which may constitute block billing. It is inappropriate for the government to "delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify . . .entries the

---

[1] United States Department of Labor–Bureau of Labor Statistics, Consumer Price Index–All Urban Consumers, *available at* http://www.bls.gov/data/home.htm.

6

Government might find . . . objectionable." *Former Emples. of BMC Software, Inc. v. United States Sec'y of Labor*, 519 F. Supp. 2d 1291, 1326 n. 51 (Ct. Int'l Trade 2007) (citation omitted). Nevertheless, the court's review of the billing statements for Hunterton & Associates and Akin Gump reveals that the attorneys have maintained sufficiently detailed billing records.

Counsel are "not required to record in great detail how each minute of [their] time was expended. But at least counsel should identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n. 12 (citation omitted). As another court has put it, "a fee petition should include some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates." *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (citation and quotation marks omitted). "However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Id.* (citations and quotation marks omitted); *see also id.* at 1191, 1191 n.13 (rejecting argument that billing entries such as "settlement" and "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses" were insufficiently specific); *Davis v. City of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) (rejecting argument that billing records were insufficiently specific, and emphasizing that Supreme Court's decision in *Hensley*, *supra*, requires only that counsel "identify the general subject matter of his time expenditures"), *vacated on other grounds by* 984 F.2d 345 (9th Cir. 1993).

Certainly many of the billing entries in the records submitted by the Shete Corporation's counsel are "hardly paragons of revelation." *See Earth Island Inst. v. Christopher*, 942 F. Supp. 597, 613 (1996) (characterizing print out of lawyers' billing notes), *vacated on jurisdictional grounds and remanded sub nom.*, *Earth Island Inst. v. Albright*, 147 F.3d 1352, 1358 (Fed. Cir. 1998). However, the billing entries at issue provide sufficiently detailed information to allow the court to determine whether the time the Shete Corporation's attorneys devoted to various tasks was not excessive or otherwise unreasonable.

**2. Degree of Success**

1   The government also argues that the Shete Corporation should not be awarded fees incurred in
2   making its unsuccessful Motion for Summary Judgement (#40) and its Opposition (#7) to the
3   government's Motion to Amend Complaint (#5). Opp'n (#85) at 25-26. The extent of a party's success
4   is an important factor in determining fees under the EAJA. The Ninth Circuit has stated that, "[i]f the
5   plaintiff has prevailed on some claims but not on others, the court must evaluate whether the successful
6   and unsuccessful claims are 'distinctly different claims for relief that are based on different facts and
7   legal theories' or whether they 'involve a common core of facts or [are] based on related legal
8   theories.'" *Schwarz*, 73 F.3d at 901 (quoting *Hensley*, 461 U.S. at 434-35). "The focus in this Circuit
9   is on whether the claims arose out of a separate course of conduct, and claims may be related if either
10  the facts or the legal theories are the same." *Sundaram v. Villanti*, 174 Fed. Appx. 368, 370 (9th Cir.
11  2005) (citation omitted).

12  Although most reported cases on the subject address a plaintiff's degree of success, as is
13  reflected in the above quoted language, the restriction applies equally to defendants. *See Hensley*, 461
14  U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the
15  court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The
16  result is what matters."). Even though the Shete Corporation's Motion (#40) and Opposition (#7) were
17  not successful, in and of themselves, both were based on the corporation's contention that the
18  government did not state a viable claim under the FCA for Medicare fraud, a defense upon which it
19  ultimately prevailed. The assertions made therein therefore involved at the very least a common core
20  of facts. Hence, the individual failures of the filings do not merit a reduction in fees.

21  **3. Fees for Representation by Multiple Attorneys**

22  Contrary to the government's implication, "there is nothing at all out of the ordinary about
23  staffing significant, high-impact litigation with multiple attorneys. The courts have recognized that the
24  retention of multiple counsel in complex cases is understandable and not a ground for reducing the
25  hours claimed because the use in involved litigation of a team of attorneys who divide up the work is
26  common for both plaintiff and defense work." *Former Emples. of BMC Software, Inc. v. United States*

8

*Sec'y of Labor*, 519 F. Supp. 2d 1291, 1333 (Ct. Int'l Trade 2007) (quoting *Jean v. Nelson*, 863 F.2d 759, 772-73 (11th Cir. 1988)). "An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th cir. 1983) (acknowledging typical staffing practices in major litigation, and reversing trial court's exclusion of time based on retention of multiple attorneys and "unnecessary duplication of effort") (citations omitted).

"A fee reduction is appropriate where, for example, a case is overstaffed such that hours spent by one lawyer are unnecessarily duplicative of those expended by another, or where excessive staffing leads to a practice of engaging in long daily conferences." *Former Emples. of BMC Software, Inc.*, 519 F. Supp. 2d at 1334 (citing *Spell v. McDaniel*, 852 F.2d 762, 767 (4th Cir. 1988) and A. Hirsch & D. Sheehey*, Awarding Attorneys' Fees and Managing Fee Litigation* 26-27 (Federal Judicial Center 2d ed. 2005) (noting that courts have reduced fee awards in instances of "duplication of services," "use of too many attorneys," and "too much conferencing")). However, "[w]hile duplication of effort is a proper ground for reducing a fee award, 'a reduction is warranted only if the attorneys are unreasonably doing the same work.'" *Jean*, 863 F.2d at 772-73 (quoting *Johnson*, 706 F.2d at 1208).

The government here makes a blanket assertion that the Shete Corporation's counsel have made duplicative efforts, and that any such excessive time should be deducted from any fee award. Opp'n (#85) at 26. In support of this assertion the government points to the Declaration of its fee expert, Boyd S. Lemon; however, it too makes only conclusory allegations in this regard. Exh. 26 to Opp'n (#85) at ¶ 9. As noted above, it is inappropriate for the government to "delegate to the Court the work of analyzing all billing entries line-by-line in an effort to identify . . . entries the [g]overnment might find ... objectionable." *Former Emples. of BMC Software, Inc.*, 519 F. Supp. 2d at 1326 n. 51. "Where, as here, a party fails to 'raise more than a generalized objection' to a category of fees, it is typically unnecessary for the prevailing party to mount an entry-by-entry defense of the challenged claims. Nor in such cases is the court generally required to review entries other than those which can be 'eliminated

9

through a cursory examination of the bill.'" *Id.* at 1337 (citing *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 n. 14 (6th Cir. 1990), *overruled on other grounds by DiLaura v. Twp. of Ann Arbor*, 2007 U.S. App. LEXIS 15263, at *3 (6th Cir. 2007)).  Upon such a review, the court finds no instance of attorneys unreasonably duplicating services or otherwise performing the same work. Therefore, reduction is not warranted in this respect, either.

### 4. Fees for Computerized Legal Research

The government also suggests that expenses incurred by opposing counsel in conducting computerized legal research were unreasonable. Opp'n (#85) at 28. Although it does not elaborate, the government refers to the findings of Mr. Lemon — that the approximately $28,000 charged by opposing counsel was excessive because (1) most law firms pay a flat fee for computerized research services, and (2) the necessity for $25,824.25 worth of legal research by a firm that has a partner (Salcido) who claims to be an expert in the field in which he was working on in this case, is questionable. Exh. 26 to Opp'n (#85) at ¶ 19. Lemon goes so far as to rhetorically ask whether "this is a means of educating young associates in the law of Medicare fraud?" *Id.*

The EAJA provides that awardable expenses "include[] the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case . . . ." § 2412(d)(2)(A). Thus, in the context of attorney's fees under the EAJA, a charge for computer research generally is appropriate. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004) (citation omitted); *see also United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("[C]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost.") (citation omitted). Even substantial computerized research expenses can be justified when the government, as in the case at hand, litigates "tenaciously." See *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (citation and quotation omitted). Nor is there reason

10

to reduce a fee award when legal research was performed to support arguments eventually unsuccessful. *See Wilkett v. Interstate Commerce Comm'n*, 844 F.2d 867, 878 (D.C. Cir. 1988) (emphasis added) ("[T]hat [counsel's] legal research bore no fruit is no reason to deny them fees for the time spent on this work. . . . [C]ounsel correctly recognized that there was no guarantee that their motion would be granted merely because it was unopposed. Therefore, it made good sense for them to research the issue."), *disapproved on other grounds as stated in Chiu v. United States*, 948 F.2d 711, 721 (Fed. Cir. 1991).

In the case at bar, it is no matter that Salcido was an expert in the field of Medicare fraud law. It is not uncommon for associates without such expertise to perform the bulk of research. Further, this case was aggressively litigated by the government, which justifies the considerable research performed to defend the Shete Corporation. Expenses routinely billed to the client, such as computerized research, are compensable under the EAJA. Hence, despite any flat-fee agreement Hunterton & Associates and/or Akin Gump may have with their respective electronic database service providers, fees for such expenses are properly awarded here.

### 5. Expenses for Secretarial Overtime

Secretarial and overhead expenses are traditionally covered by attorneys' fees and not charged separately. *Hirschey v. Fed. Energy Regulatory Comm'n*, 777 F.2d 1, 6 (D.C. Cir. 1985), *disapproved on other grounds as stated in Chiu*, 948 F.2d at 721. The Shete Corporation has not demonstrated that an exception to this rule exists in the case at bar. Thus, the court will not award Akin Gump the $2,704 it billed for secretarial overtime.

### 6. Miscellaneous Expenses

Duplicating costs, facsimile charges, telephone costs (including long distance calls), postage, air courier and travel expenses are compensable under the EAJA as reasonable expenses. *Torres v. Barnhart*, 2007 U.S. Dist. LEXIS 45526, at *60 (S.D.N.Y. 2007) (citation omitted). Upon review of the various expenditures documented by the Shete Corporation, the court finds such expenses reasonable and will award them accordingly.

. . .

### 7. Fees for Preparation of Fee Application

"[A]ttorney fees incurred in the preparation of an application for fees are compensable under the EAJA." *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed. Cir. 1985) (citations and footnote omitted). Some modest reduction is nevertheless required in light of *Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154 (1990).

In *Jean*, the Supreme Court held that a fee applicant may recover fees incurred litigating the fee award without a separate showing that the government's opposition to the fee award was not substantially justified. *See id.* at 159, 161-62 ("[O]nly one threshold [substantial justification] determination for the entire civil action is to be made"; although "[a]ny given civil action can have numerous phases," "the EAJA -- like other fee-shifting statutes -- favors treating a case as an inclusive whole"). In a footnote, however, the Court noted that its decision in *Hensley*, *supra*, requires a trial court to "consider the relationship between the amount of the fee awarded and the results obtained." *Id.* at 163 n. 10. As the Court explained, that principle applies to the fee award phase of litigation as surely as it does to the "merits" phase:

> [Thus] fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation. For example, if the Government's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate.

*Id. Accord Chiu*, 948 F.2d at 722 (fees incurred in fee litigation not awardable to extent fee applicant unsuccessful).

In this case, one-fifth of the Shete Corporation's initial fee application was dedicated to arguing for a "special factor" exemption to the EAJA cap on fees. App. (#69) at 18-22. Because the court denies this request, it must concomitantly reduce the fee award, and does so below.

### 8. Fees for Preparation of Supplemental Fee Application

In its October 23, 2007 Order (#103), the court noted that the Shete Corporation provided a detailed itemization of professional services rendered in this litigation. Order (#103) at 7. However, the court determined that certain "professional" and "consultant" services billed were not adequately

12

described. *Id.* Finding them curable, the Shete Corporation was allowed to correct the defects in an amended fee application. *Id.* As stated in its supplemental application, the Shete Corporation has elected to forego seeking such fees, rather than risk what it deems a potential for disclosure of confidential matters. Supp. (#106) at 4 n.6. These expenses, totaling $19,419.51 have therefore been omitted from the newly attached itemization. *Id.* at Exh. 2. The Shete Corporation does, however, request fees incurred in complying with the court's Order (#103); specifically, fees for accounting services required to establish its GAAP net worth. Supp. (#106) at 4-5. The court declines to award such fees, as they were only made necessary by the Shete Corporation's failure to demonstrate financial eligibility in its original fee application (#69).

**II. Professional/Consulting Expenses**

**A. Robert Salcido Consulting Fees**

The government contends that the Shete Corporation's request for an award of $5,000 for services rendered by Salcido as a consultant in this case is improper. *See* Exh. 1 to Supp. (#106). The Shete Corporation no longer requests $5,000 for consulting services rendered by Salcido because there is no specific itemization to support the services. Reply (#108) at 5 n.6. Therefore, such fees will not be awarded.

**B. Scott Manaker Consulting Fees**

In its supplemental application, the Shete Corporation sought $1,080 for work performed by Dr. Scott Manaker as defendants' medical expert witness and as a consultant on certain issues. Exh. 2 to Supp. (#106). Expert or consultant fees are recoverable under the EAJA at a rate no higher than the highest hourly rate paid by the government for its experts. § 2412(d)(2)(A)(i); *see also Scherr Const. Co. v. United States*, 26 Cl. Ct. 248, 250 (Cl. Ct. 1992) (recognizing same) (citation omitted). The government paid its medical expert $350 per hour. Opp'n (#85) at 25. Accordingly, Manaker's bill for 2.50 consulting hours is limited to $350 per hour; hence, $875 is reimbursable for his services. In light of this limitation, the Shete Corporation has correctly reduced the fees requested for services rendered by Manaker to $875. Reply (#108) at 5 n. 6.

### C. Shashi Nambisian Consulting Fees

In its supplemental application, the Shete Corporation also argues that it should recover payments made to Shashi Nambisian ("Nambisian"), who holds a PhD, who spent twenty-six (26) hours performing a statistical analysis of Prabhu's billings of the CPT code for simple pulmonary stress tests under CPT 94620. Exh. 3 to Supp. (#106). The government contends that the court should either deny this request altogether or limit reimbursement to no more than four (4) hours of Nambisian's time, which would total $600 in fees. Opp'n (#107) at 7.

In undertaking the necessary *Hensley* analysis, the court again notes that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. "[T]he court must evaluate whether the successful and unsuccessful claims are 'distinctly different claims for relief that are based on different facts and legal theories' or whether they 'involve a common core of facts or [are] based on related legal theories.'" *Schwarz*, 73 F.3d at 901 (quoting *Hensley*, 461 U.S. at 434-35).

Nambisian's analysis was the source of an argument made in Prabhu's Motion for Summary Judgment on the Government's Claims that Defendants' Medical Services Were Not Medically Necessary and Indicated. Mot. (#41) at 12-14. Specifically, the argument was that the relatively small number of patients receiving more than twenty (20) pulmonary stress sessions indicated that Prabhu ordered sessions for his patients according to what he believed was medically indicated and necessary, and therefore did not engage in an impermissible pattern of conduct in violation of government rules. *Id.* The court granted the Motion (#41), but did not rely on Nambisian's study in doing so. Order (#67). But Nambisian's study addressed the issue of medical necessity with regards to pulmonary stress tests and was therefore based on the same core of facts and legal theory relied on by the court, in part, in granting summary judgment. Hence, notwithstanding the court's failure to broach the study in its Order (#67), the analysis constitutes a recoverable expense under the EAJA.

Whether twenty-six (26) hours is a reasonable amount of time is, as previously mentioned, a

14

determination to be made by the court. Nambisian examined more than 2,700 records of the 254 patients that received pulmonary stress tests during the period covered in the Complaint (#1). Mot. (#41) at 8. Of those patients, he found only a small number received more than twenty (20) sessions. *Id.* Such expansive and detailed analysis might very well necessitate the number of hours billed. Further, the government makes only conclusory arguments with regards to the reasonableness of the hours billed, stating merely that it "could not conceivably have required 26 hours of a Ph.D.'s time." Opp'n (#107) at 7. It provides no support for this assertion, which, more importantly, seems patently inaccurate in light of the extensive documentation Nambisian had to analyze. As a result, the court will award the Shete Corporation the $3,900 in expenses it incurred for Nambisian's services.

### D. Swarts & Swarts Consulting Fees

The Shete Corporation also seeks $17,003.50 billed by Swarts & Swarts for analyzing the profitability of the pulmonary-function area of Prabhu's practice, treating it as a separate profit center. Exh. 4 to Supp. (#106). The study indicated that, taken by itself, the pulmonary-function area incurred a loss rather than a profit. This, in turn, provided the basis for argument made in Prabhu's third Motion for Summary Judgment (#40 at 4) attacking the government's common law unjust enrichment claim. Although the court granted the Motion (#40) on other grounds, the Shete Corporation's argument shared a "common core of facts," *see Schwarz*, 73 F.3d at 901 (quoting *Hensley*, 461 U.S. at 434-35), with the arguments that ultimately swayed the court. As such, recovery for this profitability analysis is proper.

### E. Interactive Presentation Solutions Consulting Fees

Lastly, the Shete Corporation seeks $2,661.27 billed by Interactive Presentation Solutions, Inc. ("Interactive"), for preparation of the audio-visual portion of counsel's oral argument on the summary judgment motions. Exh. 5 to Supp. (#106). The audiovisuals consisted of copies of the statutes involved and excerpts from videotaped depositions and from deposition transcripts. *See id.* All of these materials related to the defendants' two summary judgment motions attacking the FCA claims, and the materials were all contained in the briefs the defendants had already filed. Mot. (##40, 41, 42). Moreover, as with the above consulting services, Interactive's fees are reasonable and related to the same core of facts upon

which the motions were based and granted. *See* Order (#67). They are therefore recoverable under the EAJA.

## CONCLUSION

Based on the foregoing, the court finds that the Shete Corporation is entitled to recover attorneys' fees and costs under the EAJA. The Shete Corporation is a prevailing party and the position of the government was not substantially justified. Nor has the government demonstrated that special circumstances would make an award unjust. The court further concludes that counsel for the Shete Corporation have reasonably expended the following number of hours in this matter through July 2006 (with respect to the merits) and November 2006 (with respect to the application for fees), and are entitled to recover for this time at the following hourly rates:

| Attorneys | Year | Reasonable Hours x | Hourly Rate | = | Awardable Fee |
|---|---|---|---|---|---|
| Hunterton & Assocs. | 2004 | 503.95 | $151.65/hour | | $76,424.02 |
| Akin Gump | 2004 | 108.1 | $151.65/hour | | $16,393.37 |
| Hunterton & Assocs. | 2005 | 560 | $156.79/hour | | $87,802.40 |
| Akin Gump | 2005 | 726.5 | $156.79/hour | | $113,907.93 |
| Hunterton & Assocs. | 2006 | 131.24 | $161.85/hour | | $21,241.19 |
| Akin Gump | 2006 | 690.56 | $161.85/hour | | $111,767.13 |
| Total Reasonable Hours/Fees | | 2,720.35 | | | $427,536.04 |

The court further finds that the Shete Corporation is entitled to reasonable expenses incurred in the amount of $114,958.64.

Accordingly, and for good cause shown,

. . .

. . .

. . .

. . .

. . .

1  IT IS ORDERED that defendant's Supplementary Application for Attorneys' Fees and Other
2  Expenses (#106) is GRANTED to the extent that the government shall, without unnecessary delay, pay
3  to defendant R.D. Prahbu-Lata Shete, M.D.'s, Ltd. the sum of  $542,494.68 as the reasonable attorneys'
4  fees and costs incurred in litigating this case.

DATED this 25th day of February, 2008.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**